# UNITED STATES COURT OF INTERNATIONAL TRADE

_____

BELNICK, LLC,                                            :
                  Plaintiff           :
        v.                                       :
UNITED STATES,                                       :   Court No.  25-00419
                                          :
                  Defendant.      :

_____

## COMPLAINT

Plaintiff Belnick, LLC, by and through undersigned counsel, for its complaint alleges and follows:

1. Beginning in February, 2025, through a series of Executive Orders, President Trump imposed new and substantial additional tariffs on goods imported from nearly every foreign country. The authority cited for these "IEEPA duties" was the International Emergency Economic Powers Act ("IEEPA").

2. Plaintiff, Belnick, LLC, is an importer of merchandise subject to the IEEPA duties. Plaintiff is responsible for and has paid IEEPA duties on its imported goods.

3. IEEPA does not authorize the IEEPA duties. *V.O.S. Selections, Inc. v. Trump,* Slip Op. 25-66 (Ct. Int'l Trade 2025), *aff'd,* 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

4. Plaintiff hereby asks the Court to rule that the IEEPA duties imposed by Defendant are not lawful and to require that the IEEPA duties paid be Plaintiff be refunded to Plaintiff, with interest as proved for by law.

5. Plaintiff notes that the U. S. Supreme Court heard oral argument on *V.O.S. Selections* and a companion case that arose in the U.S. District Court for the Distrct of Columbia on November 5, 2025. A decision is expected in the near future.

6. This separate action is necessary because the right to a refund of duties is conditioned on claims being submitted by importers on an entry-by-entry basis, even if the subject duty has been ruled in principle to be unlawful.

7. This separate action is necessary now because the entries on which Plaintiff paid IEEPA duties imposed under authority of IEEPA will shortly begin to be liquidated with final assessments of these IEEPA duties, and protests of these liquidated entries will be futile at this time because CBP lacks discretion and authority to overturn or disregard the various Executive Orders imposing the IEEPA duties. Plaintiff is thus entitled, as a matter of law, to a judgment of this Court ordering complete refunds of these unconstitutionally and unlawfully imposed duties.

8. Accordingly, for itself, Plaintiff seeks (i) a final determination that the IEEPA duties are unlawful; and (ii) a final judgment awarding to Plaintiff a full refund of all IEEPA duties which have been collected from, or assessed against Plaintiff to date, as a result of the Executive Orders challenged in this lawsuit, as well as those it will continue to pay.

## PARTIES

9. Plaintiff, Belnick, LLC, is an importer of products subject to IEEPA duties.

10. Defendant the United States received the payments of the IEEPA duties and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

11. In collecting the IEEPA duties Defendant acted by and through the United States Customs and Border Protection ("CBP"), an agency within the Department of Homeland Security, which is led by Rodney S. Scott, the Commissioner of CBP.

## JURISDICTION

12. The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i). *See V.O.S. Selections*, 149 F.4th at 1334. In a civil action brought under 28 U.S.C. § 1581(i), the Court can enter a money judgment against the United States and can order any other appropriate civil relief.

## STANDING

13. Plaintiff has standing to bring this lawsuit because it has been adversely affected by agency action within the meaning of the Administrative Procedure Act, 5 U.S.C. § 702. Plaintiff is the importer of record for goods imported into the United States from countries whose goods are subject to IEEPA duties. Plaintiff has paid the IEEPA duties levied on its entries and has thus suffered injuries as a result. A determination that the IEEPA duties assessed against Plaintiff are unlawful and unconstitutional, and a judgment awarding refunds of same to Plaintiff, would redress those injuries.

## TIMELINESS

14. A plaintiff must commence an action under 28 U.S.C. § 1581(i)(1)(B) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i).

15. On February 1, 2025, President Trump first issued Executive Orders that resulted in the collection of IEEPA duties from importers. Plaintiff began paying IEEPA duties shortly

3

thereafter and thus its cause of action accrued less than two years before the filing of the instant action.

## GENERAL PLEADINGS
### The IEEPA Tariff Orders

16. On February 1, 2025, President Trump issued three Executive Orders imposing tariffs on imports from Mexico, Canada and China.[1] Each executive order was premised on IEEPA authorizing the tariffs. Collectively, these are referred to in this Complaint as the "Trafficking Tariff Orders." Pursuant to these Orders, CBP assessed additional IEEPA duty upon Plaintiff's entries.

17. President Trump subsequently modified the Trafficking Tariff Orders.[2]

18. On April 2, 2025, President Trump issued Executive Order No. 14257, 90 Fed. Reg. 15,041 ("Reciprocal Tariff Order"), *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits*.[3]

---

[1] Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025); Exec. Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025); Exec. Order No. 14195, *Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025). These followed Exec. Order No. 14157, Designating Cartels and Other Organizations as Foreign Terrorist Organizations and Specially Designated Global Terrorists, 90 Fed. Reg. 8439 (Jan. 20, 2025).

[2] Exec. Order No. 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9277 (Feb. 11, 2025); Exec. Order No. 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025), Exec. Order 14231, Amendment to Duties to Address the Flow of Illicit Drugs Across our Northern Border, 90 Fed. Reg. 11785 (Mar. 11, 2025), Exec. Order No. 14232, Amendment to Duties to Address the Flow of Illicit Drugs Across our Southern Border, 90 Fed. Reg. 11787 (Mar. 11, 2025), Exec. Order No. 14325, Amendment to Duties To Address the Flow of Illicit Drugs Across Our Northern Border, 90 Fed. Reg. 37957 (Aug. 6, 2025), Exec. Order No. 14357, Modifying Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China, 90 Fed. Reg. 50725 (Nov. 4, 2025).

[3] Exec. Order No. 14257, Regulating Imports With a Reciprocal Tariff To Rectify Trade

4

19. The Reciprocal Tariff Order imposed a 10% baseline tariff on nearly all imports into the United States, effective April 5, and additional "reciprocal" tariffs on 57 countries, effective April 9. *Id.* at Annex I. These higher country-specific tariffs range from 11% to 50%. *Id.*

20. President Trump subsequently modified the Reciprocal Tariff Order.[4]

21. In implementing the Executive-Order-based tariff regime, the Defendant directed changes to the Harmonized Tariff Schedule of the United States (HTSUS), requiring that goods subject to the challenged tariffs to be entered under new and specific tariff provisions in Chapter 99, HTSUS.

22. On April 14, 2025, several companies filed an action in this Court challenging the legality of these tariff orders. *See V.O.S. Selections*, No. 25-cv-00066 (Dkt. 2). As discussed below, this Court held the orders were unlawful and the Federal Circuit, sitting

---

Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits, 90 Fed. Reg. 15,041 (Apr. 7, 2025).

[4] Exec. Order No. 14259, Amendment to Reciprocal Tariffs and Updated Duties As Applied to Low-Value Imports from the People's Republic of China 90 Fed. Reg. 15,509 (Apr. 14, 2025); Exec. Order No. 14266, Modifying Reciprocal Tariff Rates To Reflect Trading-Partner Retaliation and Alignment (Apr. 9, 2025), 90 Fed. Reg. 15,625 (Apr. 15, 2025), Exe. Order No. 14298, Modifying Reciprocal Tariff Rates To Reflect Discussions With the People's Republic of China, 90 Fed. Reg. 21831 (May 21, 2025), Exec. Order No. 14316, Extending the Modification of the Reciprocal Tariff Rates, 90 Fed. Reg. 30823 (Jul. 10, 2025), Exec. Order No. 14323, Addressing Threats to the United States by the Government of Brazil, 90 Fed. Reg. 37739 (Aug. 5, 2025), Exec. Order No. 14329, Addressing Threats to the United States by the Government of the Russian Federation, 90 Fed. Reg. 38701 (Aug. 6, 2025), Exec. Order No. 14334, Further Modifying Reciprocal Tariff Rates To Reflect Ongoing Discussions With the People's Republic of China, 90 Fed. Reg. 39305 (Aug. 14, 2025), Exec. Order No. 14346, Modifying the Scope of Reciprocal Tariffs and Establishing Procedures for Implementing Trade and Security Agreements, 90 Fed. Reg. 43737 (Sep. 10, 2025), Exec. Order No. 14358, Modifying Reciprocal Tariff Rates Consistent With the Economic and Trade Arrangement Between the United States and the People's Republic of China, 90 Fed. Reg. 50729 (Nov. 4, 2025), Exec. Order No. 14360, Modifying the Scope of the Reciprocal Tariffs With Respect to Certain Agricultural Products, 90 Fed. Reg. 54011 (Nov. 25, 2025), Exec. Order No. 14361, Modifying the Scope of Tariffs on the Government of Brazil, 90 Fed. Reg. 54467(Nov. 26, 2025).

*en banc*, affirmed.

23. In the months since the *V.O.S. Selections* complaint was filed, President Trump, invoking IEEPA, has issued additional Executive Orders, directives, instructions, amendments and adjustments imposing additional tariffs and modifying others. As explained below, IEEPA does not authorize the President to impose tariffs. By this complaint, Plaintiff challenges those orders (the "IEEPA Tariff Orders") that affect the duty rates on goods imported from the countries with which Plaintiff does business and as a result of which Plaintiff has paid and pays IEEPA duties (thus causing Plaintiff injury), and which the Federal Circuit has already held to be unlawful. By this complaint, Plaintiffs also challenge those other Orders, directives, instructions, amendments and adjustments imposing tariffs later issued under claimed authority of IEEPA. Collectively, the Orders challenged in *V.O.S. Selections* and the later pronouncements are the "Challenged IEEPA Tariff Orders").

### CBP's Implementation of the Challenged IEEPA Tariff Orders

24. CBP is charged with the assessment and collection of duties. 19 U.S.C. §§ 1500, 1502.

25. When goods enter the United States, CBP is responsible for assessing and collecting any tariffs, including the IEEPA Duties, on the imported goods based upon the tariff classification of the goods, according to the rates established by the Harmonized Tariff Schedule of the United States ("HTSUS"). 19 U.S.C. §§ 1202, 1500, 1502.

26. Once the final amount of duty is determined by CBP, CBP "liquidates" the entry and notifies the importer of record as to whether the entry is liquidated as entered, or the importer owes more money or is entitled to a refund. 19 U.S.C. § 1500.

27. While liquidation normally occurs 314 days after the date of entry, CBP has discretion to

extend the deadline for liquidation for up to one year pursuant to an importer's request and a showing of good cause. *See* 19 U.S.C. § 1504(b)(2); 19 C.F.R. § 159.12(a)(1)(ii). CBP also has the power to extend the deadline for liquidation for up to one year when it lacks information sufficient to determine the correct classification, appraised value, or rate and amount of duty applicable to the imported merchandise. *See* 19 U.S.C. § 1504(b)(1); 19 C.F.R. § 159.12(a)(1)(i).

28. This Court has exercised the equitable authority to suspend liquidation. *E.g., In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1365-66 (Ct. Int'l Trade 2021).

29. If the liquidated entry is protestable, the importer of record has 180 days after liquidation to file a protest contesting the liquidation and any other CBP decisions encompassed therein. 19 U.S.C. § 1514(a). But not all liquidations are protestable: where CBP acts in a ministerial capacity (*i.e.*, without discretion) in imposing a duty, the entry's liquidation cannot be protested. *Id.*; *see also Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024).

30. This Court and the Federal Circuit have cautioned that in certain circumstances an importer may lack the legal right to recover refunds of duties for entries that have liquidated, even where the underlying legality of a tariff is later found to be unlawful. *See In re Section 301 Cases*, 524 F. Supp. 3d at 1365-66 (Ct. Int'l Trade 2021); *Target Corp. v. United States*, 134 F.4th 1307, 1316 (Fed. Cir. 2025).

31. In consequence, the Customs protest remedy need not be employed, and exhaustion of administrative remedies is not required, when such remedy would be futile or inappropriate. *See e.g.*, *McCarthy v. Madigan*, 503 U.S. 140 (1992); *Conoco Inc. v. Foreign Trade Zones Board*, 18 F.3d 1581 (Fed. Cir. 1994).

### Three Federal Courts Have Held that IEEPA Does Not Authorize Assessment of Duties.

32. The Challenged IEEPA Tariff Orders reference IEEPA, 50 U.S.C. § 1701 *et seq.*, the National Emergencies Act, 50 U.S.C. § 1601 *et seq.*, section 604 of the Trade Act of 1974, as amended, 19 U.S.C. § 2483, and 3 U.S.C. § 301 for authority to impose tariffs

33. None of these statutes authorizes the President to impose tariffs. Of these, Defendant has relied solely on the IEEPA statute to impose and collect the IEEPA Duties contrary to that statute.

34. IEEPA grants the President certain powers, but they "may only be exercised to deal with an unusual and extraordinary threat with respect to which a national emergency has been declared for purposes of this chapter and may not be exercised for any other purpose." 50 U.S.C. § 1701(b).

35. Those powers include the ability to "investigate, regulate, or prohibit" certain transactions in foreign exchange, payments through banks involving foreign countries or nationals, or imports of "currency or securities." 50 U.S.C. § 1702 (a)(1)(A).

36. The President may also control, block, or prohibit the movement or importation of funds or property in which "any foreign country" or foreign national has "interest" in, and which is also subject to the U.S. jurisdiction. 50 U.S.C. § 1702(a)(1)(B).

37. Finally, and only when the U.S. is engaged in "armed hostilities" or has been attacked by a foreign country, the President may "confiscate" property of such a foreign person or country that also is subject to U.S. jurisdiction. 50 U.S.C. § 1702(a)(1)(C).

38. The text of IEEPA does not use the word "tariff" or any term of equivalent meaning.

39. IEEPA was first enacted in 1977 and has been amended several times, but it has never been amended to authorize, or used by any other President to impose, tariffs.

40. The United States Constitution provides that "[a]ll legislative powers herein granted shall be vested in a Congress of the United States." U.S. CONST. art. I, § 1.

41. The United States Constitution also provides that "Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises…" U.S. CONST. art. I, § 8, cl. 3 ("Taxing Clause"), and "[t]o regulate Commerce with foreign Nations." *Id.*, cl. 3 ("Commerce Clause").

42. It has always been understood that tariffs fall within the Taxing and Commerce Clauses.

43. To the extent it is ever permissible under the U.S. Constitution for Congress to delegate any part of the powers vested in it by the Constitution to the President, it must do so, at a minimum, by providing an intelligible principle to direct and cabin the President's authority. *See Fed. Commc'ns Comm'n v. Consumers' Rsch.*, 145 S. Ct. 2482, 222 L. Ed. 2d 800 (2025). In IEEPA, Congress did no such thing.

44. Reading IEEPA as authorizing tariffs would be self-defeating because it would then also require striking down IEEPA as unconstitutional under the nondelegation doctrine for lack of any intelligible principle.

45. Moreover, "[c]ourts expect Congress to speak clearly if it wishes to assign to an agency decisions of vast economic and political significance." *West Virginia v. EPA*, 597 U.S. 697, 716 (2022) (quoting *Utility Air Regulatory Group v. EPA*, 573 U. S. 302, 324 (2014)). When Congress has not clearly spoken, courts are directed to find that matters "of vast economic and political significance" are beyond the power of the President. *Biden v. Nebraska*, 600 U.S. 477, 505–06 (2023).

46. By any objective measure, the Challenged Tariff Orders are "of vast economic and political significance." Because IEEPA does not clearly authorize the President to set tariffs—indeed, the statute does not mention the words "tariff" or "duty" and is not even housed in the same title of the U.S. Code as Congress's actual trade laws (Title 19)—the Challenged Tariff Orders cannot stand and the Defendant is not authorized to implement and collect them.

47. On May 28, 2025, a three-judge panel of this Court granted summary judgment to the plaintiffs in *V.O.S. Selections,* holding that IEEPA did not authorize assessment of IEEPA Duties. This Court permanently enjoined the government from enforcing the IEEPA Duties at issue in that case.

48. Upon appeal, the Federal Circuit stayed this Court's decision to enjoin the collection of IEEPA duties.

49. Sitting *en banc*, the Federal Circuit issued its decision on August 29, 2025, affirming this Court's decision that the IEEPA Duties are unlawful. *See V.O.S. Selections*.

50. In a separate lawsuit filed by a different group of importers, the U.S. District Court for the District of Columbia held that IEEPA does not authorize tariffs of any sort. *Learning Resources, Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL260121 (U.S. Sept. 9, 2025). That decision was appealed to the Court of Appeals for the D.C. Circuit, but before the D.C. Circuit held argument, the United States Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources*.

51. The cases were consolidated, with oral argument before the Supreme Court held on November 5, 2025.

**Plaintiff Paid IEEPA Duties**

52. Plaintiff's imports subject to one or more of the above-cited IEEPA Duties entered the United States under newly assigned HTSUS codes. As of the date of this Complaint, Plaintiff has paid one or more of the above-cited IEEPA duties imposed by the Challenged IEEPA Tariff Orders.

## STATEMENT OF CLAIMS

### COUNT 1

### THE CHALLENGED IEEPA TARIFF ORDERS ARE *ULTRA VIRES* UNDER V.O.S. SELECTIONS

53. Plaintiff incorporates paragraphs 1-52 above by reference.

54. The Court of International Trade in *V.O.S. Selections* held that the President exceeded his authority under IEEPA when he imposed tariffs on imported goods.

55. The *V.O.S. Selections* Court held that: (a) IEEPA authorizes the President only to "investigate, regulate, or prohibit" importation; (b) IEEPA does not authorize the imposition of tariffs on imports; and (c) neither the text of IEEPA nor its legislative history contains any clear delegation to the President to set tariff rates, *cf Biden v. Nebraska*, 600 U.S. 477, 505–06 (2023).

56. The Federal Circuit affirmed that interpretation, holding that Congress did not clearly delegate to the President the authority to impose tariffs under IEEPA. The Federal Circuit further stated that construing IEEPA to permit such authority would raise grave constitutional concerns, including concerns under the major questions and non-delegation doctrines.

57. The Executive Orders challenged in this Complaint and cited above are both (i) the very Orders that were struck down in *V.O.S. Selections* and (ii) later amendments or

11

modifications to those initial Trafficking and Reciprocal Tariffs that took effect after the commencement of the *V.O.S. Selections* case. These later Orders are materially identical in structure, authority claimed, and effect to those struck down in *V.O.S. Selections* and they, too, purport to impose duties and to modify the HTSUS solely under IEEPA authority. For the same reasons set forth in *V.O.S. Selections*, the Challenged IEEPA Tariff Orders exceed the President's statutory authority and are therefore unlawful, void *ab initio,* and without effect as applied to Plaintiff.

58. Plaintiff respectfully requests that this Court apply the binding decision of the Federal Circuit in *V.O.S. Selections*, rule and hold the Challenged IEEPA Tariff Orders unlawful as to Plaintiff, enjoin Defendant from enforcing them as to Plaintiff, and order refund of all IEEPA Duties paid by and collected from Plaintiff, with interest as provided by law.

## COUNT 2

### ALTERNATIVELY, THE CHALLENGED IEEPA TARIFF ORDERS ARE UNCONSTITITIONAL

59. Plaintiff incorporates paragraphs 1-58 above by reference.

60. In the alternative, if the Court were to construe IEEPA as authorizing tariffs, the Challenged IEEPA Tariff Orders must nevertheless be held unlawful because such a reading would convert IEEPA into a constitutionally impermissible delegation of legislative power.

61. The United States Constitution provides that "[a]ll legislative powers herein granted shall be vested in a Congress of the United States." U.S. CONST. art. I, § 1.

62. The United States Constitution also provides that "Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises…" U.S. CONST. art. I, § 8, cl. 3 ("Taxing

12

Clause"), and "[t]o regulate Commerce with foreign Nations." Id., cl. 3 ("Commerce Clause").

63. It has always and everywhere been understood and accepted that tariffs fall within the Taxing and Commerce Clauses.

64. To the extent it is ever permissible under the U.S. Constitution for Congress to delegate any part of the powers vested in it by the Constitution to the President, it must do so, at a minimum, by providing an intelligible principle to direct and cabin the President's authority. *See Fed. Commc'ns Comm'n v. Consumers' Rsch.*, 145 S. Ct. 2482, 222 L. Ed. 2d 800 (2025). In IEEPA, Congress did no such thing.

65. Reading IEEPA as authorizing tariffs would actually be self-defeating because it would then also require striking down IEEPA as unconstitutional under the nondelegation doctrine for lack of any intelligible principle.

66. Moreover, "[c]ourts expect Congress to speak clearly if it wishes to assign to an agency decisions of vast economic and political significance." *West Virginia v. EPA*, 597 U.S. 697, 716 (2022) (quoting *Utility Air Regulatory Group v. EPA*, 573 U. S. 302, 324 (2014)). When Congress has not clearly spoken, courts are directed to find that matters "of vast economic and political significance—under the "major questions" doctrine--are beyond the power of the President. *Biden v. Nebraska*, 600 U.S. 477, 505–06 (2023).

67. By any objective measure, the Challenged Tariff Orders are "of vast economic and political significance." Because IEEPA does not clearly authorize the President to set tariffs—indeed, the statute does not mention the words "tariff" or "duty" and is not even housed in the same title of the U.S. Code as Congress's actual trade laws (Title 19)—the Challenged Tariff Orders cannot stand and the Defendant is not authorized to implement

and collect them.

68. Of relevance here, the District Court in *Learning Resources* held that interpreting IEEPA to permit the President to impose broad import tariffs would violate Article I, § 1 and § 8 of the U.S. Constitution, which vest in Congress the power to "lay and collect … Duties". The court further reasoned that under the major questions doctrine, Congress must speak clearly when assigning to the Executive branch decisions of vast economic and political significance—such as the power to impose sweeping tariffs that affect international trade—and IEEPA contains no such clear delegating statement.

69. Accordingly, even assuming IEEPA could be construed to authorize the Challenged IEEPA Tariff Orders, that delegation would lack an intelligible principle to correctly cabin the President's authority and would therefore be unconstitutional. On that basis, the Challenged IEEPA Tariff Orders are unlawful.

70. Plaintiff therefore seeks a judgment holding that the Challenged IEEPA Tariff Orders are unlawful under the reasoning of *Learning Resources* as to Plaintiff and ordering refunds of all IEEPA duties collected from Plaintiff, with interest as provided by law.

71. In the face of the IEEPA duties being void *ab initio,* refunds are the only lawful remedy. In *McKesson Corp v. Florida Alcoholic & Tobacco Div.*, 496 U.S. 18 (1990), the court held that the "exaction of a tax constitutes a deprivation of property" and "the Due Process Clause ... obligates the [government] to provide meaningful backward-looking relief to rectify any unconstitutional deprivation" (*Id*. at 31). This is accomplished "by refunding the tax previously paid" (*Id*. at 39).

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

a. rule and hold that the President lacks authority under IEEPA to set tariffs;

b. rule and hold that the Challenged IEEPA Tariff Orders are *ultra vires* and void *ab initio* with respect to Plaintiff;

c. rule and hold that, with respect to Plaintiff, Defendant lacks authority to implement and collect any duties set out in the HTSUS that are based on the IEEPA Tariff Orders;

d. with respect to Plaintiff, enjoin Defendant from imposing and collecting any IEEPA duties;

e. order Defendant to refund, with interest as provided for by law, any and all IEEPA duties paid by and collected from Plaintiff;

f. award Plaintiff its reasonable costs, including attorneys' fees, incurred in bringing this action;

g. grant such other and further relief as the Court may deem just and proper.

\*   \*   \*   \*   \*   \*

        Respectfully submitted,

        */s/ Mark K. Neville, Jr.*

        Mark K. Neville, Jr.
        International Trade Counsellors
        *Counsel to Plaintiff*
        2153 Clementine Street
        Naples, FL 34120
        Tel. 239 384 9790
        Cell 347 226 0238
        mkneville@itctradelaw.com

Dated: December__, 2025

## **CERTIFICATE OF SERVICE**

## **CIT CASE NO. 25-00419**

Pursuant to U.S. Court of International Trade Rules 4(b) and (h), I hereby certify that on December 8, 2025, a copy of Plaintiff's Summons and Complaint were served on the following party, Defendant the United States, by U.S. Certified Mail, Return Receipt Requested:

Attorney-In-Charge
Commercial Litigation Branch
International Trade Field Office
U.S. Department of Justice
26 Federal Plaza
New York, NY 10278

*[signature]*

Mark K. Neville, Jr.
International Trade Counsellors
Tel. 239 384 9790
mkneville@itctradelaw.com